### State v. Thomas
*[Cite as 2 AOA 465]*

*Case No. 89CA004594*
*Lorain County, (9th)*
*Decided March 28, 1990*

*Crim. R. 11(C)*
*Crim. R. 32.1*

---

*Gregory White, Prosecuting Attorney, 226 Middle Ave., Elyria, OH 44035 for Plaintiff.*

*Jack W. Bradley, Attorney at Law, 520 Broadway, 2nd Floor, Lorain, OH 44052 for Defendant.*

BAIRD, J.

This cause comes before the court upon the conviction of Derrick Thomas in the Lorain County Court of Common Pleas for aggravated robbery, R.C. 2911.01(A)(1), with a gun specification pursuant to R.C. 2941.141.

Appellant had been indicted on two counts of aggravated robbery with gun specification. Before commencement of trial and pursuant to a plea bargain agreement, one count was dismissed, and appellant pleaded guilty to the remaining count. Prior to coming to court to enter his guilty plea, appellant signed a form "plea sheet" after reviewing it with counsel. Two of the questions on the plea sheet read:
"***.

"6. Do you understand that you have a legal right to a trial by jury and that by pleading guilty you waive this right?

"7. Do you understand your other rights connected with a jury trial, such as confronting witnesses, right to call your own witnesses, right against self-incrimination and right to have your guilt established beyond a reasonable doubt, and you waive these rights?

Appellant answered "yes" to both questions.

At the plea hearing on April 11, 1989, after discussing the charge and the possible sentence, the trial court made the following inquiry of appellant:
"***.

"THE COURT: Do you understand that you are giving up your right to a Jury trial?

"THE DEFENDANT: Yes.

"THE COURT: And all the constitutional rights that go with a Jury right?

"THE DEFENDANT: Yes.
"***.

"THE COURT: Have you gone over the plea sheets with Mr. Bradley and Mr. Tully?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand it[sic]?

"THE DEFENDANT: Yes.

"THE COURT: Have you read and responded to each of the questions?

"THE DEFENDANT: Yes.

"THE COURT: Is that your signature on it?

"THE DEFENDANT: Yes.

"THE COURT: Is this also your signature on the short card entry entering your plea today?

"THE DEFENDANT: Yes.

The court accepted the guilty plea and referred appellant to the probation department for presentence evaluation. Three days after entering his guilty plea, on April 14, 1989, appellant filed a motion to withdraw his guilty plea. During the motion hearing on May 12, 1989, appellant's counsel explained that appellant had pleaded guilty out of mistake and confusion, that he had never intended to acknowledge guilt for the crime charged, and that his change of mind occurred almost immediately after the plea had been entered. To support his contention of innocence, appellant brought two alibi witnesses to testify at the hearing. The court did not hear their testimony, nor did it hear directly from the appellant. The court reviewed a transcript of the plea hearing of April 11, 1989, and determined that there was no reason to permit appellant to vacate his guilty plea. The motion was overruled and the appellant was sentenced.

### ASSIGNMENT OF ERROR I

"The trial court erred in failing to personally advise the appellant of his right to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he could not be compelled to testify against himself pursuant to Criminal Rule 11(C)(2)(c)."

The acceptance of a guilty plea in a felony case other that aggravated murder is governed by Crim. R. 11(C)(2), which reads:

"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his pleas he is waiving his right to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself. ***."

In *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, The Supreme Court of Ohio held that in accepting a written plea to a felony charge, the court must adhere scrupulously to the provisions of Crim. R. 11(C)(2). This requires an oral dialogue between the trial court and the defendant to determine fully the defendant's understanding of the consequences of his plea. *Id.* at paragraph two of the syllabus. These requirements are not satisfied by a written statement by the defendant or by representations of his counsel. *Id.* at paragraph three of the syllabus. However, subsequent Ohio Supreme Court cases have modified the "scrupulous adherence" rule of *State* v. *Caudill, supra,* to require only "substantial compliance" with the provisions of Crim. R. 11(C) (2). Appellant asserts that, despite subsequent modifications, *State* v. *Caudill, supra,* is controlling in this case. The state contends that substantial compliance was established according to the cases modifying *State* v. *Caudill.* We disagree with the state's contention, and find that the requirement of substantial compliance was not met in this case. None of the cases subsequent to *State* v. *Caudill* have extended the concept of substantial compliance to the degree urged by the state. In *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, where the trial court had failed to inform the defendant that, in pleading guilty to murder, he would not be eligible for probation pursuant to R.C. 2951.02(F), as required by Crim. R. 11(C)(2)(a), the court first established the substantial compliance rule. The court found substantial compliance, in that informing a defendant of his ineligibility for probation is not constitutionally mandated, and in view of the fact that the trial court did orally and specifically discuss with the defendant his waiver of each of his constitutional rights, and the fact that the language in the written waiver executed by the defendant and other circumstances effectively informed the defendant that he would not be eligible for probation.

In *State* v. *Strawther* (1978), 56 Ohio St. 2d 298, the emphasis was placed on the question of whether there had been any prejudicial effect in the trial court's failure to orally inform the

defendant of his waiver of the right to compulsory process. In that case, as in *State* v. *Stewart, supra,* the defendant had executed in open court a written waiver of his rights, and the trial court orally discussed with the defendant his constitutional rights, as enumerated in *Boykin* v. *Alabama* (1969), 395 U.S. 238: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. Relying on *Boykin,* the Supreme Court treated the right to compulsory process as one that was not constitutionally mandated. Therefore, the court found no prejudice to the defendant by the trial court's omission of discussion of this right in that his constitutional rights had been discussed with him, defendant had executed a written waiver of these rights in open court, and the guilty plea had been entered on the second day of trial--in effect, after the defendant had already fully exercised this right to have witnesses subpoenaed on his behalf.

In view of the Ohio Supreme Court's later holding in *State* v. *Ballard* (1981), 66 Ohio St. 2d 473, 477, fn. 4, that the right to compulsory process is a constitutional right--along with the privilege against self-incrimination, the right to jury trial, and the right to confront one's accusers--neither *State* v. *Stewart, supra,* nor *State* v. *Strawther, supra,* applies to the case *sub judice.* The application of these cases is limited to situations where the omission is of rights that are specified in Crim. R. 11 (C)(2), but which are not constitutional rights.

Where the above constitutional rights are involved, the trial court's failure to reasonably inform a defendant that he is waiving these rights by pleading guilty renders the guilty plea constitutionally infirm. *State* v. *Ballard, supra,* at 478. Though the exact language of Crim. R. 11(C) is not required as long as the trial court *explains* these rights in a manner reasonably intelligible to the defendant (*Id.* at paragraph two of the syllabus), the Supreme Court of Ohio Strongly recommended that trial courts use the language in Crim. R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty. *Id.* at 479.

Despite the subsequent modifications of the rule of *State* v. *Caudill, supra,* the third paragraph of its syllabus remains unchanged. *State* v. *Summers* (1981), 3 Ohio App. 3d 234, 236, fn. 3. Accordingly, a meaningful dialogue is required between the trial court and the defendant even where a written waiver of rights

has been executed by the defendant. *Garfield Heights* v. *Brewer* (1984), 17 Ohio App. 3d 216.

In the case *sub judice,* the trial court accepted appellant's written waiver and plea after specifically inquiring of him only as to whether he understood he was waiving one of his constitutional rights, the rights to a jury trial. It is significant to note that, in the Supreme Court cases discussed above, all *but* one of the constitutional rights were discussed with the defendant. In only one case, *State* v. *Billups* (1979), 57 Ohio St. 2d 31, did the trial court fail to directly discuss with the defendant any of his constitutional rights. However, the Supreme Court of Ohio found no prejudicial error based on the peculiar facts of that case. The defendant had been present in court and heard the judge explain each of these rights to another defendant. The defendant expressly acknowledged that he understood these rights and waived another recitation of them for his benefit. Finally, the defendant executed in open court a written waiver in which his rights were clearly explained:

"EXPLANATION OF RIGHTS

"I fully understand that under the laws of the State of Ohio I have a constitutional right to a trial by jury and that by signing this waiver, I no longer have such a right and that the Judge can sentence me for the crime charged without a trial. I further understand that by entering a plea of guilty, I hereby WAIVE AND RELINQUISH the following RIGHTS:

"1.    Presumption of Innocence: I am presumed innocent until prove guilty.

"2. Burden of proof: The prosecutor must prove beyond a reasonable doubt that I am guilty.

"3. Speedy and Public trial: I have a right to a speedy and public trial by jury, or to a speedy and public trial before judge if I waive a trial by jury.

"4.    Confrontation: I have a right to confront any witnesses against me and I have a right to question them.

"5. Compulsory process: I have a right to have any witnesses that may be favorable to my case brought to my trial.

"6. Self-Incrimination: I need not testify against myself and the fact that I do not cannot be used against me."

"***."

The form plea sheet signed by the appellant in the case *sub judice*--before coming to court, without ever hearing an explanation of his rights by the trial court, and without expressly

waiving such an explanation--merely listed in one question the constitutional rights that he was waiving, without any explanation of their meaning, and was therefore insufficient to satisfy the requirements of Crim. R. 11(C)(2). See *State* v. *Joseph* (1988), 44 Ohio App. 3d 212. The addition of a direct oral question regarding the right to a jury trial, and a perfunctory and collective reference to "all the constitutional rights that go with a jury right", does nothing to cure such insufficiency.

### ASSIGNMENT OF ERROR II

"The trial court erred in refusing to permit appellant to withdraw his guilty plea in violation of Criminal Rule 32.1 and constituted (sic) an abuse of the trial court's discretion when the appellant took immediate action to withdraw his guilty plea."

The key factors in determining whether a trial court abused its discretion in denying a motion to withdraw a guilty plea are: 1) whether the defendant was represented by highly competent counsel; 2) whether the defendant was afforded a full hearing pursuant to Crim. R. 11 before he entered the plea; 3) whether the defendant was given a complete and impartial hearing on his withdraw motion; and 4) whether the record reveals that the court gave full and fair consideration to the plea withdraw request. *State* v. *Peterseim* (1980), 68 Ohio App. 2d 211.

As the appellant was not given a full hearing pursuant to Crim. R. 11, or given a full hearing on his plea withdrawal request, we find that the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea.

Appellant's assignments of error are well taken. Judgment of the trial court is reversed, the guilty plea is vacated, and the cause remanded to the trial court to allow the defendant to plea anew or to go to trial.

*Judgment reversed, and cause remanded.*

CACIOPPO, P. J.
REECE, J.
Concur