[Cite as *State v. Gibson*, 2023-Ohio-4792.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff- Appellee, | : | |
| v. | : | No. 112160 |
| DUANE GIBSON, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 28, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-11-550542-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellee.*

Kimberly Kendall Corral and Gabrielle M. Ploplis, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Duane Gibson was convicted of felony murder in 2012. He and three codefendants were involved in a kidnapping and ransom plot.

The plot turned deadly when the police shot to death a fourth accomplice while rescuing the kidnapped victim. All three codefendants testified that Gibson planned the kidnapping and solicited their help. Gibson was convicted of felony murder and other offenses following a jury trial and received a prison term of 38 years to life.

{¶ 2} Ten years later, Gibson filed the instant motion for leave to file a motion for new trial. He submitted an unsigned affidavit from an inmate, Cordell Smith, who was unrelated to the underlying case but alleged that when he and Umar Clark, one of Gibson's codefendants, were incarcerated together, Clark told him that "everything that came out of his mouth 'was shit'" and that he would "tell the truth" if Gibson paid him $10,000. Gibson also submitted an undated document that appears to be a part of a letter from someone who signed the writing as "Mr. Clark." After a careful review of the record and applicable law, we conclude the trial court did not abuse its discretion in denying Gibson's motion without a hearing. Accordingly, we affirm the trial court's decision.

**Trial Testimony**

{¶ 3} The facts of this case are described in this court's decision in Gibson's direct appeal, *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372. Lloyd Davis was kidnapped by three men at gunpoint. He recognized one of them as Gibson, with whom he shared family ties. The men bound him with twine and duct tape, beat him, burned him with cigarettes, and robbed him. They drove him in his own truck to a house owned by Gibson. Davis was held inside the truck, parked in the garage of the house, and guarded by Clark and Leon James, who was

later shot dead by the police. Gibson and two other codefendants, Jay Hillsman and Ron Brunson, tried to obtain ransom money from Davis's brother. Davis's brother called the police, and all three were apprehended when they tried to pick up the ransom money dropped off by Davis's brother in a prearranged location. The police then went to the house where Davis was held. When the police tried to rescue Davis, the truck, driven by James, struck the officers' vehicle, and James was shot by the officers and later died from his injuries.

{¶ 4} Gibson's codefendants, Clark, Hillsman, and Brunson, made plea deals with the state. At trial, they all testified that Gibson was the mastermind behind the kidnapping of Davis and each described his own role in the kidnapping and ransom scheme.

{¶ 5} Clark testified that Gibson called him to help with a kidnapping scheme. Gibson drove him to a house and told him that the "guy lived there." Clark was not involved in the kidnapping of Davis, but Gibson gave him a gun at one point for his use. Gibson later instructed him to wait in the garage and guard Davis with James.

{¶ 6} Codefendant Hillsman testified that Gibson called him for help and then picked him up. While in Gibson's vehicle, he called Davis's brother and negotiated a ransom, as instructed by Gibson. He was also told by Gibson to pick up the ransom bag dropped off by Davis's brother. When the police chased their vehicle later, Gibson told him to throw evidence out of the window. Codefendant Brunson testified that Gibson and Hillsman asked him if he would go with them to get some

money and Gibson asked to drive Brunson's vehicle; Hillsman made the ransom calls and then picked up the bag.

**Gibson's Motion for Leave to File a Motion for New Trial**

{¶ 7} The jury rendered the guilty verdict in June 2012. Almost ten years later, on May 24, 2022, Gibson filed the instant motion for leave to file a motion for a new trial. He claims there is newly discovered evidence entitling him to a new trial and he was unavoidably prevented from discovering the evidence. The alleged newly discovered evidence is in the form of two documents attached to his motion.

{¶ 8} The first document is an affidavit of Smith. Smith does not have any firsthand knowledge of the criminal events but avers that while they were incarcerated together in 2011, Clark told him that he gave false information at the trial. The affidavit was dated April 2, 2021. However, it was not signed by Smith.

{¶ 9} The affidavit states:

> I know Umar Clark from growing up in the same neighborhood and we were locked up tother in Cuyahoga County jail in 2011 when we were fighting cases at the same time.

> Umar Clark had talked to me about his testimony in Duane Gibson's trial at that time.

> In summary, he told me that everything that came out of his mouth "was shit."

> I am hereby affirming that Umar Clark told me that if Duane Gibson paid him $10,000, he would take back his statement and tell the truth of what really happened.

> Umar Clark told me that he gave false information because he felt it was Duane Gibson's fault that Leon died and that is why he lied on the stand.

I testify that on many occasions Umar Clark stated that if Duane does not pay the $10,000, that he was not going to take back his testimony and tell the truth.

He continuously repeated that he would tell the truth for * * * $10,000 throughout the years; including when we were incarcerated together in Trumbull Correctional and Mansfield Correctional Institution.

{¶ 10} The second document submitted by Gibson in support of his motion is an undated partial letter signed by "Mr. Clark." It states, in its entirety:

F***K who you show or give them papers to. I don't regret shit I do you writing me telling me what I need to do. I don't take orders money move me. You keep talking bout this affidavit shit. I didn't heard you say no numbers yet. Let me know how much yo freedom worth to you. Or you can stay down. It's all on you. Get at me.

P.S. You doing life. Damn that's f***ed up! If they only know you ain't make me do shit or you ain't give me that gun.

{¶ 11} In Gibson's motion, he claims he could not have timely discovered the new evidence because he only discovered Smith "through the work of a private investigator in 2021." He alleges that his counsel only began representing him at this late postconviction stage and counsel's work led to the discovery of Smith. Gibson, however, submitted no affidavit from the alleged investigator or his counsel, or other documentary evidence, in support of this claim.

{¶ 12} As to the letter, Gibson claims he "had no control over when Clark would write him a letter confessing he lied in his testimony against him at trial" and that "[t]here was no possibility that [he] could have obtained this evidence until it was unexpectedly sent to him by Clark." Again, there is also no affidavit or other

documentary evidence submitted by Gibson regarding the circumstances of how or when Gibson came to possess the letter.

{¶ 13} The state opposes the motion, noting the irregularities of the documents and calling into question their authenticity. The state also argues Gibson failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from timely discovering the new evidence and a hearing on the motion was not warranted.

{¶ 14} The trial court denied Gibson's motion. The judgment entry does not include findings of fact and conclusions of law, stating only that defendant has failed to satisfy his burden under Crim.R. 33(B).[1]

{¶ 15} On appeal, Gibson raises five assignments of error for our review:

I.     The trial court abused its discretion in ruling that Mr. Gibson did not meet the requisite burden under Crim.R. 33(B).

      A. Gibson was unavoidably prevented from discovering the information contained in Cordell Smith's affidavit within 120 days after the verdict.

      B. Gibson was unavoidably prevented from discovering the information contained in Umar Clark's handwritten letter.

II.    The trial court abused its discretion for failing to, at a minimum, hold an evidentiary hearing as the evidence

---

[1] We note that the Supreme Court of Ohio recently released *State v. Miller*, Slip Opinion No. 2023-Ohio-3448, which involved a motion for leave to file a motion for a new trial. *Miller* is a split decision without a majority. However, both the concurrence and the dissent agree that, when denying a motion for leave to file a new-trial motion, trial courts should, as a matter of best practice, make findings of fact and conclusions of law because those determinations by the trial court and its reasoning are essential for the appellate courts' review of an appeal. *Id*. at ¶ 26 and 36.

supporting Mr. Gibson's new trial motion warranted consideration in open court.

    A. The exhibits contained in state's opposition considered with the exhibits supporting Mr. Gibson's motion demonstrate why court intervention is necessary.

III.    The trial court abused its discretion denying appellant's motion for leave to file a motion for new trial without having reviewed the record.

IV.    Hearsay and opinion statements independently filed by a witness's mother are not properly before the court.

V.    The trial court erred in refusing to order the complete handwriting analysis record while the trial court retained jurisdiction.

As the issues raised in the first, second, third assignments are related, we discuss them jointly.

**Law and Standard of Review Regarding Motion for Leave to File a Motion for New Trial**

{¶ 16} R.C. 2945.79 allows a defendant to file a motion for new trial based on a claim that his substantial rights are materially affected by certain circumstances. One such circumstance is when "new evidence is discovered material to the defendant, which he could not with reasonable diligence have discovered and produced at the trial." R.C. 2945.79(F).

{¶ 17} Crim.R. 33 provides the procedure for the motion for a new trial. It states, in pertinent part:

(A)    Grounds. A new trial may be granted on motion of the defendant for any of the following causes *affecting materially the defendant's substantial rights*:

\* \* \*

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. \* \* \*

(B)   Motion for new trial; form, time. Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear *by clear and convincing proof that the defendant was unavoidably prevented* from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear *by clear and convincing proof that the defendant was unavoidably prevented* from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

(Emphasis added.)

{¶ 18} Under the rule, a new trial may be granted when the defendant's substantial rights are materially affected by the discovery of new evidence "material to the defense." Crim.R. 33(A)(6). Furthermore, when a motion for a new trial is made on grounds of newly discovered evidence, the motion must be filed within 120 days after a verdict. Crim.R. 33(B). If a defendant files a motion for a new trial after the expiration of that time, the defendant must first seek leave of the trial court to file a delayed motion for a new trial. As the Second District explained in *State v.*

*McConnell,* 2d Dist. Montgomery No. 24315, 2011-Ohio-5555, ¶ 18, "[a]llowing a defendant to drag the process out while the evidence and the recollections of witnesses become increasingly stale defies the very purpose of the criminal rules."

{¶ 19} To obtain leave to file a delayed new-trial motion, the defendant must demonstrate "by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial[.]" Crim.R. 33(B). "[A] party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 20} Furthermore, a defendant is only entitled to a hearing on a motion for leave to file a delayed motion for new trial if he submits documents that "on their face support the claim of being unavoidably prevented from timely discovering the new evidence." *State v. Dues*, 8th Dist. Cuyahoga No. 105388, 2017-Ohio-6983, ¶ 12, citing *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, 869 N.E.2d 77, ¶ 19 (2d Dist.) and *State v. Ambartsoumov*, 10th Dist. Franklin Nos. 12AP-877 and 12AP-878, 2013-Ohio-3011, ¶ 13 (leave may be summarily denied where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay). *See also State v. Cleveland*, 9th Dist. Lorain No. 08CA009406, 2009-Ohio-397, ¶ 54.

{¶ 21} We review a trial court's decision denying a motion for leave to file a delayed motion for a new trial for an abuse of discretion. *See, e.g., State v. Washington*, 8th Dist. Cuyahoga No. 103875, 2016-Ohio-5329, ¶ 16. The trial court's decision whether to hold an evidentiary hearing on such a motion is also reviewed for an abuse of discretion. *State v. Hill*, 8th Dist. Cuyahoga No. 102083, 2015-Ohio-1652, ¶ 16.

**Trial Court's Denial Without a Hearing Was Not an Abuse of Discretion**

{¶ 22} To be granted leave to file a motion for new trial, Gibson must present "new evidence material to the defense" that affects his substantial rights, Crim.R. 33(A)(6), and demonstrates by clear and convincing evidence that he was unavoidably prevented from its discovery. Crim.R. 33(B). Clear and convincing evidence is that which will produce in the trier of fact "a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. While it is a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt. *Id.*

{¶ 23} Regarding the alleged new evidence in the form of an affidavit from Smith, Smith did not sign the purported affidavit. The absence of the affiant's signature calls into question the authenticity of the document.[2] *See, e.g., State v.*

---

[2] "'The general rule is that an affidavit must appear on its face to have been taken before the proper officer, and in compliance with all legal requisitions.'" *Toledo Bar Assn. v.*

*Cremeans*, 5th Dist. Muskingum No. CT2016-0018, 2017-Ohio-202 (the affiant did not sign the affidavit attached to the motion for a new trial and therefore it lacked evidentiary quality).

{¶ 24} More importantly, however, even if Smith did sign the affidavit, the alleged new evidence is not an affidavit from a recanting witness or an individual who has any firsthand knowledge of the criminal events. The affidavit, even if genuine, consists of hearsay statements from an affiant who alleged that he was told by a witness that his testimony at trial was "shit" and would take back his testimony if paid. In addition to the hearsay nature of the affidavit, the affiant's reference to his conversations with Clark about his trial testimony while both were held in the Cuyahoga County Jail in 2011 is incongruous, given that Gibson's trial took place in June 2012. For these reasons, the affidavit lacks evidentiary value to constitute "new evidence material to the defense" and its discovery would not "affect[] materially the defendant's substantial rights" for purposes of Crim.R. 33(A)(6). The trial court did not abuse its discretion in denying Gibson's motion for leave to file a new-trial motion.

{¶ 25} Similarly, the letter from "Mr. Clark," if authentic, also lacks sufficient evidentiary value to constitute material new evidence for purposes of

---

*Neller*, 102 Ohio St.3d 1234, 2004-Ohio-2895, 809 N.E.2d 1152, ¶ 22, quoting *Benedict v. Peters*, 58 Ohio St. 527, 536, 51 N.E. 37 (1898). The lack of signature indicates the affidavit on its face was not taken under oath before the notary. *In re Dukes*, 81 Ohio App.3d 145, 150, 610 N.E.2d 513 (9th Dist.1991) (when an affidavit was not signed, it was not made by the affiant under oath).

Crim.R. 33(A)(6). At the trial, two other codefendant testified to Gibson's role in the kidnapping and ransom scheme. In the letter, Clark appears to state that he would testify differently if paid by Gibson, but did not specify what the testimony would be.

{¶ 26} Even if the purported affidavit and the letter would be material new evidence pursuant to Crim.R. 33, Gibson must demonstrate by clear and convincing proof that he was unavoidably prevented from filing his motion for a new trial within 120 days. Crim.R. 33(B). And, to be entitled to a hearing on the motion for leave, he must submit documents that, on their face, support his claim that he was unavoidably prevented from timely discovering the evidence in question.

{¶ 27} Gibson alleges in his motion that he only discovered Smith's conversations with Clark "through the work of a private investigator in 2021" and that his new counsel only started to represent him at this late postconviction stage. He, however, submitted no affidavit from the alleged investigator, his counsel, or Smith, or any documentary evidence, to explain the circumstances and timing of the discovery of Smith and Clark's conversations. Regarding the letter, Gibson claims that "[t]here was no possibility that Gibson could have obtained this evidence until it was unexpectedly sent to him by Clark." The letter, however, was not dated and there is nothing in the record to indicate when the letter was written.

{¶ 28} Accordingly, the documents Gibson submitted in support of his motion for leave to file a delayed new-trial motion *on their face* do not demonstrate he was avoidably prevented from a timely discovery. The trial court did not abuse

its discretion in denying Gibson's motion without a hearing. The first, second, and third assignments of error are without merit.

**Other Documents**

{¶ 29} The fourth and fifth assignments of error relate to the letter purportedly written by Clark and they concern two documents in the record. The first is a letter Clark's mother wrote to the court claiming her son did not write the letter attributed to him. The second is a handwriting report obtained by the prosecutor after the trial court denied Gibson's motion. We address these two assignments of error together.

{¶ 30} Regarding the first document, the court's docket reflects that, after Gibson filed the motion claiming Clark falsely testified at trial, Anitra Brasfield, Clark's mother, filed a letter with the court. She stated that the letter allegedly written by her son was a forged document and that she spoke to her son after Gibson filed the motion and her son denied ever writing a letter to Gibson while incarcerated in the Cuyahoga County Jail. Also, her son told her that Smith had approached him and told him that Gibson was going to forge Clark's signature and pay Smith to write a statement against Clark. Under the fourth assignment of error, Gibson argues Clark's mother has no independent knowledge of the facts contained in the letter and the letter should be stricken from the record. The record reflects that Gibson never moved the trial court to strike the document, however.

{¶ 31} Regarding the handwriting report, the record reflects that six days after the trial court denied Gibson's motion on September 13, 2022, the prosecutor

sent an email to Gibson's counsel, advising counsel that a handwriting report, which had just become available to the prosecutor, concludes "support for same source" regarding "the letter that Clark claimed he did not write."[3]   The handwriting report was attached to the email.  Upon receiving the email and report, Gibson's counsel filed a "Motion for Order to Produce Complete Testing" on October 4, 2022, before filing the instant notice of appeal.  In the motion, Gibson asked the trial court to order the state to file with the court the complete file regarding the handwriting test and, additionally, the recorded jail call between Clark and his mother referenced in Clark's mother's letter.  The trial court did not rule on the motion.  Under the fifth assignment, Gibson argues the trial court erred in failing to grant the motion.

{¶ 32} The issue presented in this appeal is whether Gibson was unavoidably prevented from discovering new evidence material to his defense and entitled to leave to file a motion for new trial.  Those two documents are immaterial to the instant appeal because our analysis and resolution of the issue does not depend on whether the letter from Clark was forged.  As we have explained in the foregoing,

---

[3] The prosecutor's email to the defense counsel states:

> Please be advised the attached report was made available to myself today. Umar Clark, Jr. did submit handwriting templars and compared to the letter Clark claimed he did not write.  The report indicates "Support for Same Source" but is limited apparently due to the lack of original writings.  The report does not make a source identification.  Although this report is being disclosed to you, the State's position regarding leave [to file a motion for a new trial] remains unchanged.

even if the letter is authentic, the trial court did not abuse its discretion in denying the motion without a hearing. The fourth and fifth assignments of error are moot due to our disposition of the first three assignments of error.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, A.J., and
SEAN C. GALLAGHER, J., CONCUR